IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| WILLIAM TOPP; and RODNEY BRINK and JUDY BRINK, Husband and Wife, | * * * * | 4:10-cv-00221 |
| Plaintiffs, | * * | |
| v. | * * | |
| GROOMS & CO. CONSTRUCTION, INC., DANNY'S DIGGIN' N DOZIN', INC. a/k/a DDD, INC.; DANIEL M. MCKEE, Individually; UNITED STATES; MONROE COUNTY BOARD OF SUPERVISORS; MONROE COUNTY SOIL & CONSERVATION DISTRICT; and SOAP CREEK WATERSHED BOARD, | * * * * * * * * | |
| Defendants. | * * * | ORDER ON MOTION TO DISMISS |

Before the Court is the United States'[1] Motion to Dismiss, filed on May 14, 2010

(hereinafter "First Motion to Dismiss"). Clerk's No. 3. Plaintiffs, William Topp, Rodney Brink,

and Judy Brink (hereinafter "Plaintiffs"), filed a response on June 1, 2010. Clerk's No. 8. The

United States did not file a reply, but on August 5, 2010, filed a second Motion to Dismiss

(hereinafter "Second Motion to Dismiss"). Clerk's No. 17. Plaintiffs filed a second response on

---

[1] The Complaint, when removed from state court, named the United States Department of Agriculture and the Natural Resources Conservation Service (hereinafter "federal agencies") as Defendants, rather than the United States. *See* Clerk's No. 3. Subsequently, Plaintiffs filed a First Amended Complaint in which they named the United States as a Defendant, removing the federal agencies from the case's caption. *See* Clerk's No. 7. For the purpose of readability, the Court will consistently refer to the federal agencies, as well as the United States, as the United States.

August 23, 2010.  Clerk's No. 20.  The matter is fully submitted.[2]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This dispute revolves around the construction of a watershed structure in Monroe County, Iowa on property in which Plaintiffs have an ownership interest (hereinafter "Watershed Structure").  First Am. Compl. (hereinafter "Compl.") ¶¶ 14, 18.  The United States Department of Agriculture, Natural Resources Conservation Service (hereinafter "NRCS") played a significant role in both planning and supervising the construction of the Watershed Structure.  Beginning in 1971, at the request of the State Soil Conservation Committee, NRCS (then named the Soil Conservation Service) assisted county governments and soil conservation districts in planning out and carrying out a watershed protection project in the Iowa counties of Appanoose, Davis, Monroe and Wapello (hereinafter "Watershed Project"), pursuant to the Watershed Protection and Flood Prevention Act.  Notice of Removal, App. at 166 (Adkins Dep.).  The project involves the construction of 154 flood water detention dams in upland portions of the designated watershed area (hereinafter "Soap Creek Watershed").  *Id.* at 167.   Of particular relevance to the present dispute, Defendants Monroe County Board of Supervisors (hereinafter "County Board") and Monroe County Soil & Conservation District (hereinafter "District"), received an easement on Plaintiffs' property, and subsequently acted through their designated agent, Soap Creek Watershed Board (hereinafter "Soap Creek Board"), to direct the construction of the Watershed Project, including the Watershed Structure at the center of this dispute on

_____

[2]  Replies are permitted, but not required under the Court's Local Rules.  *See* L.R. 7.g.  The United States' Second Motion to Dismiss essentially functions as a reply in support of the First Motion to Dismiss, and Plaintiffs' response to the Second Motion to Dismiss does not raise new issues.  Accordingly, the Court does not believe an additional filing from the United States would substantially aid it in the consideration of this matter.

Plaintiffs' property.  Compl. ¶¶ 15-16.

In September 2006, NRCS and the Soap Creek Board entered into Project Agreement 69-6114-6-06, regarding the construction of fifteen flood-retarding structures within the Soap Creek Watershed, including the Watershed Structure.[3]  Notice of Removal, App. at 124 (Moltzen Dep.).  On or about December 28, 2006, NRCS and the Soap Creek Board entered into an agreement with Grooms & Co. Construction, Inc. (hereinafter "Contractor"), wherein the Contractor would build the Watershed Structure in Monroe County on Plaintiffs' property.  Compl. ¶¶ 17-18.  The Contractor then subcontracted the construction of the Watershed to Danny's Diggin' N Dozin', Inc. (hereinafter "Subcontractor").  *Id.* ¶ 19.

Plaintiffs complain of numerous damages to their property as a result of the construction activities.  They allege that the Subcontractor trespassed on the Plaintiffs' property, violating agreements between the Soap Creek Board and Plaintiffs, and causing damage that included the destruction of trees and crops, a shelter structure, and a well structure.  *Id.* ¶¶ 22, 24-25, 36.  In addition, Plaintiffs assert that the manner in which the Watershed was constructed has obstructed their access to portions of the Plaintiffs' property, caused saturation and leakage of water at various parts of the Plaintiffs' property, caused erosion of Plaintiffs' property, and disrupted hunting access to the Plaintiffs' property.  *Id.* ¶¶ 27-28, 35-36.  Further, they allege that the Contractor and Subcontractor failed to restore the Plaintiffs' property.  *Id.* ¶ 36.

In regard to the United States' liability for these damages, Plaintiffs allege that NRCS employees were physically present on site on a regular basis, overseeing and supervising the

---

[3] NRCS and the Soap Creek Board subsequently executed two amendments to the Project Agreement, the first in January 2007, and the second in December 2008.  Notice of Removal, App. at 124.

construction of the Watershed Structure, and that Plaintiffs' alleged damages may have been caused or aggravated by improper and deficient design and/or improper and deficient supervision by NRCS. *Id.* ¶¶ 23, 37. They also assert that NRCS employees were aware of agreements between Plaintiffs and the Soap Creek Board regarding what was permissible and what was not permissible pursuant to the easement on Plaintiffs' property. *Id.* ¶ 22. In addition, Plaintiffs allege that after these damages occurred, NRCS employees changed, or authorized the change, in the plans and scope of the watershed protection project to retroactively ratify and reward the wrongful conduct of the Contractor and Subcontractor that caused the Plaintiffs' damages. *Id.* ¶ 38.

After sustaining these damages, Plaintiffs filed suit against the Contractor in the Iowa District Court in and for Monroe County, Iowa, on August 11, 2009 (*Topp v. Grooms & Co. Const., Inc.*, Case No. LALA003522 (D. Monroe County, Iowa)). *See* Notice of Removal, App. at 1. The action underwent various permutations in state court, including a consolidation with Case No. LALA003547 (D. Monroe County, Iowa). *See id.* at 9-15, 45-47, 53-62, 78-114. After Plaintiffs were granted leave to file a second amended petition adding the federal, county and municipal Defendants, the United States removed the case to federal district court, pursuant to 28 U.S.C. § 1442, and filed the First Motion to Dismiss, primarily asserting sovereign immunity. Clerk's Nos. 1-3. Plaintiffs subsequently filed a "First Amended Complaint" (hereinafter "Amended Complaint"), revising the pleading such that it now states the following state law claims against the United States, as well as against other named Defendants: (1) trespass; (2) nuisance; (3) respondeat superior; (4) negligent failure to properly design, supervise and/or

construct; and (5) willful damage to crops, pursuant to Iowa Code § 717A.3.[4]  Clerk's No. 7.  By

way of response, the United States filed a Second Motion to Dismiss, in which it stated:

> In the main, the United States seeks dismissal of [the] claims against it on the same
> grounds as were asserted in support of the [first] motion to dismiss . . . .  Therefore,
> in this memorandum, rather than restating the arguments already placed before the
> Court, the United States will limit its argument to replying to the contentions in
> Plaintiff's resistance to the [first] motion.

United States' August 5, 2010 Mem. in Supp. of Mot. to Dismiss at 4 ("hereinafter Def.'s

Second Br.").  Plaintiffs responded to the United States' Second Motion to Dismiss by observing

that the Second Motion essentially functioned as a reply; accordingly, Plaintiffs simply relied on

the authorities and arguments set forth in their previous resistance.  Based on these submissions,

the Court considers whether the United States is immune from liability for Plaintiffs' claims.

## II.  STANDARD OF REVIEW

"Sovereign immunity is a jurisdictional question."  *Rupp v. Omaha Indian Tribe*, 45 F.3d

1241, 1244 (8th Cir. 1995).  Thus, a defendant raising a defense of sovereign immunity may file

a motion to dismiss for "lack of jurisdiction over the subject matter," pursuant to Federal Rule of

Civil Procedure 12(b)(1), before answering the complaint filed in any action.  Because subject

---

[4]  The revisions embodied in the Amended Complaint avoid several of the United States'
arguments in favor of dismissal.  Plaintiffs removed the United States as a Defendant from the
breach of contracts and implied warranty of good workmanship claims.  Accordingly, the United
States' Motion to Dismiss Plaintiffs' contract and implied warranty claims is denied as moot.
Plaintiffs' Amended Complaint also exchanged the United States as a named Defendant for the
federal agencies, obviating the Government's objections to personal jurisdiction, insufficient
process, and insufficient service of process with respect to the federal agencies, and the
Government's argument that Plaintiffs could not maintain a Federal Tort Claims Act ("FTCA")
action against the federal agencies, but only the United States.  Accordingly, the Government's
Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2), (4) and (5) and under Rule
12(b)(1), insofar as it was based on the United States' argument regarding the cognizance of an
FTCA action against federal agencies, is also denied as moot.

matter jurisdiction is a threshold consideration, a district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993) (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)).

A motion to dismiss under Rule 12(b)(1) may challenge either the facial sufficiency or the factual truthfulness of a plaintiff's jurisdictional allegations. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Facial challenges are limited to analyzing the face of the complaint. *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005). When considering a facial challenge, the plaintiff's factual allegations are presumed to be true and the Court views them in the light most favorable to the nonmoving party. *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008). "The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)); *see also Osborn*, 918 F.2d at 729 n.6 ("In [a facial challenge], the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." (citations omitted)).

Factual challenges invoke facts other than those pleaded in the complaint. *Osborn*, 918 F.2d at 729 n.6. In considering factual challenges, "the Court may look outside the pleadings to determine whether jurisdiction exists, and the nonmoving party loses the benefit of favorable inferences from its factual statements." *Dolls, Inc. v. City of Coralville*, 425 F. Supp. 2d 958, 970 (S.D. Iowa 2006); *Titus*, 4 F.3d at 593. However, the jurisdictional issue and substantive

issues can be so intertwined that a full trial on the merits may be necessary to resolve the issue. *Osborn*, 918 F.2d at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)).

### III. LAW AND ANALYSIS

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *FDIC v. Meyer*, 501 U.S. 461, 475 (1994)); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). "Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992) (internal quotation marks and citations omitted)); *see also United States v. Kubrick*, 444 U.S. 111, 117-18 (1979) ("We should also have in mind that the Act waives the immunity of the United States and that . . . we should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended." (citations omitted)).

### A. *Immunity from Actions for Damages from Flood Waters*

The United States first argues that Plaintiffs' claims against the United States should be dismissed because "the United States retains its sovereign immunity from suits for damages caused by flood waters or arising from flood control projects." United States' May 14, 2010 Mem. in Supp. of Mot. to Dismiss at 7 (hereinafter "Def.'s First Br."). In support of this proposition, the United States cites *Fisher v. United States Army Corps of Engineers,* 31 F.3d 683, 684 (8th Cir. 1994), which in turn quotes *Dewitt Bank & Trust Co. v. United States*, 878 F.2d 246, 247 (8th Cir. 1989) for the proposition that: "[The immunity provision of the Flood

Control Act of 1928] shields the government from tort claims arising from construction or management of federal flood control projects." The United States argues that since "Plaintiffs are seeking damages as redress for injuries allegedly suffered as a result of negligence in the construction of a flood control project," the United States has sovereign immunity from the claims under § 702c. Def.'s First Br. at 8.

Plaintiffs respond that the United States "misread[s] the protection provided to them under [§] 702c by putting too much emphasis on the word 'construction.'" Pls.' Resistance to United States' Mot. To Dismiss at 8 (hereinafter "Pls.' First Br."). Plaintiffs argue that *Central Green Co. v. United States*, 531 U.S. 425 (2001), the most recent Supreme Court case discussing the scope of immunity under § 702c, has displaced the case law cited by the United States in support of an overly expansive interpretation of § 702c. *Id.* at 9. They assert that, following *Central Green*, immunity under § 702c does not extend to the damages alleged in the Complaint[5] which have nothing to do with water damage, i.e., damages like destroyed trees, a destroyed/damaged well cap, removed top soil, and the destruction of an access road. *Id.* After reviewing *Central Green*, the Court agrees with Plaintiffs.

When Congress enacted the Flood Control Act of 1928, it included at § 702c the following provision to limit federal liability with respect to damage from flooding: "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." 33 U.S.C. § 702c. In *Central Green*, the Supreme Court considered the "narrow question" of whether water that flows through a federal facility, that was designed

_____

[5] In the interest of readability, since the removed Complaint and the Amended Complaint are substantially similar, all references hereinafter to Plaintiffs' Complaints, whether they be to the Complaint upon removal or the Amended Complaint, will generally be to the "Complaint."

and operated for flood control purposes, falls within the immunity provision set forth in § 702c. 531 U.S. at 427. The *Central Green* district court, in a decision upheld by the Ninth Circuit Court of Appeals, relied on "an earlier Ninth Circuit case, which held that if a 'project has flood control as one of its purposes, and the events giving rise to the action were not wholly unrelated to the project,' immunity necessarily attached." *Id.* (quoting App. to Pet. for Cert. 15, which in turn quoted *Washington v. E. Columbia Basin Irrigation Dist.*, 105 F.3d 517, 520 (1997)). The *Central Green* Court disapproved of the broad interpretation of the phrase "floods or flood waters " adopted by the Ninth Circuit and other Circuit Court of Appeals, including the Eighth Circuit. *Id.* at 430-31 n.5, 436 (describing the Eighth Circuit's approach in *Dewitt Bank & Trust Co.*, 878 F.2d at 246 as "overinclusive"). Instead, the Supreme Court instructed: "[I]n determining whether § 702c immunity attaches, courts should consider the character of the waters that cause the relevant damage rather than the relation between that damage and a flood control project." *Id.* at 437. The Supreme Court reversed and remanded the case, noting that further factual inquiry would be required to determine whether the damage had been caused by flood waters or by the routine use of the governmentally constructed water infrastructure. *Id.*

Given the narrow reading of § 702c by the Supreme Court in *Central Green*, the Court finds that the United States is not completely immune from liability for the damages as alleged by Plaintiffs. Here, Plaintiffs have alleged a variety of damages, including the destruction of trees and structures during construction, which Plaintiffs assert occurred are "unrelated to water control." Damages of this nature, according to Plaintiffs' pleading, would not be caused by "floods or flood waters" for the purposes of § 702c. Thus, Plaintiffs' claims for the damages directly caused by the construction activity on Plaintiffs' property, which did not result from

"floods or flood waters," are not subject to immunity under § 702c.

However, Plaintiffs have also alleged other damages that conceivably could have arisen from a flooding event, i.e., inundation and saturation of the Plaintiffs' property. These damages might fall within the ambit of § 702c. But without a factual record regarding these damages, the Court is without sufficient information to determine whether they resulted from "floods or flood waters." Accordingly, the Court cannot conclude at this time that the United States is entitled to partial immunity under § 702c. The Court understands the United States' concern that these issues of immunity "be adjudicated in an expedited manner." Def.'s Second Br. at 4. Thus, after further discovery regarding these jurisdictional matters is completed, if the United States believes the facts show that some of Plaintiffs' asserted damages are ascribable to "floods or flood waters," it should file a properly supported motion and request an evidentiary hearing on the issue. *See Osborn*, 918 F.2d at 730 ("If the defendant thinks the court lacks jurisdiction, the proper course is to request an evidentiary hearing on the issue. The motion may be supported with affidavits or other documents. If necessary, the district court can hold a hearing at which witnesses may testify." (internal citations omitted)).

### B. *Immunity from Federal Torts Claim Act Actions*

The remainder of the United States' arguments regarding sovereign immunity relate to the Federal Tort Claims Act ("FTCA"). The FTCA authorizes:

> Claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The United States is liable for tort claims under the FTCA "in the same

manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. The FTCA is, however, a limited relinquishment of the common-law immunity of the United States. For example, the FTCA specifies the federal government can only be sued in federal court. 28 U.S.C. § 1346. In addition, the FTCA exempts certain categories of claims from its waiver of sovereign immunity. *See* 28 U.S.C. §§ 2680(a)-(n).

    1.    *Derivative jurisdiction.*

    The United States first argument against jurisdiction in connection with the FTCA is premised on the doctrine of derivative jurisdiction. Def.'s First Br. at 10-12; *see also* Def.'s Second Br. at 4-6. The doctrine of derivative jurisdiction is based on the theory that federal jurisdiction upon removal is derivative of state court jurisdiction. *See North Dakota v. Fredericks*, 940 F.2d 333, 336-39 (8th Cir. 1991). Under this doctrine, if the state court in which the suit was filed lacked jurisdiction, as is the case for FTCA claims, then the federal court to which the suit is removed also lacks jurisdiction and should be dismissed, regardless of the fact that the suit could properly be filed in federal court. Def.'s First Br. at 10. The United States discusses the history of this doctrine, including the Eighth Circuit's decision rejecting the doctrine in *Fredericks,* and Congress' subsequent amendment to 28 U.S.C. § 1441. *Id.* at 11.

    In *Fredericks*, the Eighth Circuit noted that "[t]he doctrine of derivative jurisdiction, [which was] never based on anything explicit in the removal statutes, but rather a judicial gloss upon them," was overruled by Congress when it "removed this 'caselaw gloss' from the law of removal." 940 F.3d at 336 (quoting H.R. Rep. No. 99-423, at 1545 (1985)). The *Fredericks* court observed that such a change was warranted since the doctrine imposed convoluted

procedural machinations on the parties that "made no sense." Id.

> The result [of the doctrine] is that a federal court refuses to entertain a case over which only it has jurisdiction. Presumably, the plaintiff then refiles in the federal court, or you, as defendant, file suit for declaratory judgment in that court, so in the end the federal court will decide the dispute.

*Id.* The *Fredericks* court felt that "[t]his kind of rigmarole is unworthy of a civilized judicial system." *Id.* It then proceeded to reject the plaintiff's argument that the 1985 amendments to § 1441 had no impact on the doctrine of derivative jurisdiction with respect to all removals not within the terms of § 1441. *Id.* at 336-37. Applying the judicial technique of "the equity of the statute," a "principle [which] enables 'judges to distill from a statute its basic purpose,' and [] 'then employ it to slough off the archaisms in their own legal structure,'" the Eighth Circuit held that "the doctrine of derivative jurisdiction, as applied to defeat removals, should be abandoned completely." *Id.* at 338.

The United States asserts, however, that the 2002 amendment to § 1441 "rejects the *Fredericks* equity of the statute analysis of Congressional intent, and supercedes that decision insofar as it rejects the doctrine of derivative jurisdiction in cases removed to federal courts under statutes other than § 1441." *Id.* Plaintiffs dispute the United States's reasoning, arguing that "*Fredericks* is still the law–and with good reason."

In 2002, Congress again amended § 1441 to add the phrase "under this section" to § 1441(f), such that it now states: "The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action was removed did not have jurisdiction over that claim." Given the narrow scope of the 2002 amendment, and the broad holding of *Fredericks*, the Court does not agree with the United States that the 2002 amendments to § 1441 undermine the

application of *Fredericks* to § 1442. Rather than re-formulate what has already been aptly stated by another district court, the Court notes its agreement with the following analysis by the District Court of Minnesota when it was presented with the same argument:

> First and most importantly, this Court is bound by *Fredericks*. In that case, the Eighth Circuit completely abandoned the derivative jurisdiction doctrine, a judicially-created doctrine, as it related to all removals–irrespective of the removal statute on which a defendant relies. Although other courts have criticized *Fredericks*, it is still the law of the Eighth Circuit. Second, neither the text nor the sparse legislative history of the 2002 amendment contains any indication that Congress intended to overturn the complete abandonment of the doctrine by the *Fredericks* court. That Congress decided to statutorily abolish the doctrine in § 1441 provides no indication that Congress intended to reinstate the doctrine under § [1442] or any other removal provisions. *See Chisom v. Roemer*, 501 U.S. 380, 396 n.23 (1991) (Congress's failure to discuss an issue "can be likened to the dog that did not bark" and may be probative to discern congressional intent). Third, applying the derivative jurisdiction doctrine to removals only under § 1441 would create arbitrary inconsistencies in determinations of subject matter jurisdiction. *See Fredericks*, 940 F.2d at 337 (policy underlying abrogation of derivative jurisdiction in § 1441 supports complete abandonment of derivative jurisdiction in all removed actions).

*Glorvigen v. Cirrus Design Corp.*, Civil No. 06-2661, 2006 WL 3043222, at *3 (D. Minn. Oct 24, 2006). Moreover, the Eighth Circuit reinforced the conclusion that *Fredericks* is still good law in the Eighth Circuit in a recent unpublished opinion, when it rejected an analogous issue of derivative federal jurisdiction. *See St. Clair v. Spigarelli*, No. 08-2673, 2009 WL 3352014, at * 1 (8th Cir. Oct. 20, 2009) (holding that "a state law venue defect is not grounds for dismissal of a removed action," and in support, citing *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1298-1300 (11th Cir. 2001), which, in turn, relied on *Fredericks*). Accordingly, the Court denies the United States' request to dismiss the claims against it under the theory of derivative jurisdiction.

The Court adds that it is troubled by the United States' suggestion that while the United States cannot be sued in State court, the claims against the private and state Defendants in this case should be remanded to proceed in State court. *See* Def.'s First Br. at 12. Setting aside the

issue of whether a remand would be proper, the Court questions whether such a procedure would be compatible with the administration of justice. In essence, the United States proposes that the claims against the private and state Defendants and the claims against the United States cannot and should not be litigated in the same suit in the same court, despite the fact that the claims against all Defendants are intimately intertwined. Such an arrangement would place a great burden on Plaintiffs as they would be required to litigate simultaneously in two forums, despite their clear intent to bring all claims together in one action, would be an unnecessarily inefficient use of judicial resources, and would raise the real and troublesome specter of parallel adjudications that could lead to inconsistent results or questionable assertions of preclusion. Indeed, it seems to the Court that this is exactly the "kind of rigmarole" that Judge Arnold described in *Fredericks* as being "unworthy of a civilized judicial system." 940 F.2d at 336.

      2.    *Discretionary function exception.*

The United States also argues that the discretionary function exception, one of several exceptions to FTCA liability set forth in 28 U.S.C. § 2680, should apply to NRCS's actions such that the United States is immune from Plaintiffs' FTCA claims. Under this exception, the United States may not be sued under the FTCA for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. 2680(a). If a claim falls within this so-called "discretionary function" exception, the Court has no subject matter jurisdiction over the case. *See Dykstra v. United States Bureau of Prisons*, 140 F.3d 791, 795 (8th Cir. 1998).

The Supreme Court has established a two-part test for determining when the

discretionary function exception applies. *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *Demery v. United States Dep't of Interior*, 357 F.3d 830, 832-33 (8th Cir. 2004). First, the conduct of the federal defendant must "involve[] an element of judgment or choice. Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536 (internal citation omitted). Second, "assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* Congress intended that the discretionary function exception "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). The governmental employee need not, in fact, have considered public policy factors; instead, "the relevant inquiry is merely whether the conduct at issue is 'susceptible to policy analysis.'" *C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 797-98 (8th Cir. 1993) (quoting *United States v. Gaubert*, 499 U.S. 315, 325-26 (1991)). The United States must demonstrate that both prongs of the test are satisfied in order to take advantage of the discretionary function exemption. *See Demery*, 357 F.3d at 834.

Notably, "[t]he general rule that 'a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign,'" does not apply when interpreting the scope of exceptions to the government's waiver of immunity under the FTCA. *Dolan v. United States Postal Service*, 546 U.S. 481, 491 (2006) (quoting *Lane v. Peña*, 518 U.S. 187, 192 (1996)). Rather, "the proper objective of a court attempting to construe one of the

subsections of 28 U.S.C. § 2680 is to identify 'those circumstances which are within the words and reason of the exception'–no less and no more." *Id.* at 492 (quoting *Kosak v. United States*, 465 U.S. 848, 853, n.9 (1984)).

    a. *Planning.*

In arguing for the application of the discretionary function exception, the United States focuses on NRCS's role in the planning of the Watershed Project. Def.'s First Br. at 17-19. The United States details statutes and regulations that provide that NRCS should consider both economic and environmental concerns in the planning of watershed projects. *Id.* (quoting Watershed Protection and Flood Prevention Act of 1954, Pub. L. 83-566, § 3, 68 Stat. 666 (Aug. 4, 1954); 16 U.S.C. §§ 1003(1)(2), and (3), 1005; 42 U.S.C. § 4321, *et seq.*; 7 C.F.R. §§ 622.11, 622.2, 622.30). In addition, the United States points to an affidavit from Martin Adkins, Assistant State Conservationist for Water Resources for NRCS, attesting to the agency's planning process, including consideration of policy issues. Notice of Removal, App. at 164-66. In response, Plaintiffs do not dispute the United States' characterization of the relevant statutes and regulations or Adkins' affidavit. Rather, Plaintiffs acknowledge that the scope and planning of the project "arguably" falls within the discretionary function exception. Pls.' First Br. at 15. The Court also agrees that the discretionary function exception precludes the United States' liability for NRCS's decisions in planning the Watershed Structure.

As the Eighth Circuit observed in *E. Ritter & Co. v. Department of Army, Corps of Engineers,* before holding that the design and construction of an outlet ditch as a part of a larger flood control project fell "within the perimeter of the discretionary function exception," the courts in our Circuit have consistently held that "decisions or omissions on the 'policy or

planning' level are exempt under the [FTCA's] discretionary function exception." 874 F.2d

1236, 1241-42 (8th Cir. 1989) (quoting *In re Estate of Gleason v. United States*, 857 F.2d 1208,

1209 (8th Cir. 1988) and *Madison v. United States*, 679 F.2d 736, 739 (8th Cir. 1982)); *see also*

*Gaubert*, 499 U.S. at 323 ("Where Congress has delegated the authority to an independent

agency or to the Executive Branch to implement the general provisions of a regulatory statute

and to issue regulations to that end, there is no doubt that planning-level decisions establishing

programs are protected by the discretionary function exception, as is the promulgation of

regulations by which the agencies are to carry out the programs. In addition, the actions of

Government agents involving the necessary element of choice and grounded in the social,

economic, or political goals of the statute and regulations are protected."). Given that the

authorizing statutes, as well as the implementing regulations, instruct NRCS to use its discretion

to consider economic and environmental policies when planning watershed projects, the Court

believes no additional facts are necessary to conclude that NRCS's acts or omissions in planning

the Watershed Project are immune from FTCA liability under the discretionary function

exception.

      b.  *Oversight and supervision.*

      The Court's inquiry into the applicability of the discretionary function exception,

however, does not end here. Plaintiffs have asserted that NRCS employees were physically

present, overseeing and supervising the construction, and that during this phase of construction,

the Contractor and Subcontractor damaged the property, in violation of contractual agreements.

Plaintiffs argue that NRCS's supervision and direction of the construction work contributed to

the damage to their property and that those acts are "outside the realm of discretionary decision

making."[6]  Pls.' First Br. at 15.  Neither party has fleshed out its arguments on this issue.  The

United States merely observes that in *Claude v. Smola*, 263 F.3d 858, 861 (8th Cir. 2001), the

Eighth Circuit "concluded that the discretionary function exception precluded suit against the

United States for failing to provide guidance on the hiring of a contractor for a government

funded project, or for failing to supervise an independent contractor."  Def.'s First Br. at 16;

Def.'s Second Br. at 7.  Similarly, Plaintiffs' counter-arguments regarding the implementation

phase of the project do not delve beyond general statements denying the applicability of the

exception.  Given the conclusory nature of the parties' arguments and the lack of supporting

facts offered with respect to this issue, the Court treats the dispute as a facial challenge to

jurisdiction, considering only whether, on the face of the Complaint, the discretionary function

exception immunizes the United States from liability with respect to the negligent oversight and

supervision claims.

     First, the Court considers the "threshold" matter of whether the allegedly wrongful acts

---

[6] Plaintiffs also reference their allegation, added to the First Amended Complaint, that
NRCS retroactively changed the "plan to ratify the wrongful acts," arguing that such behavior
cannot fall within the scope of the discretionary function exception, "or at least cannot [] until
the federal employees can assert some economic or policy reason [f]or doing so."  Pls.' First Br.
at 15.  However, the nature of the alleged retroactive changes by NRCS to the Soap Creek
Watershed plans lack specificity regarding when and how such changes took place, or how such
challenges relate to the damages to Plaintiffs' property.  *See* Def.'s Second Br. at 6 (noting that
even assuming a retroactive change was made, "it did not cause Plaintiffs any injury because
whatever injury they incurred had already occurred"). While additional detail in the allegation is
not necessarily required under Federal Rule of Civil Procedure 8, the lack of detail in the
allegation and lack of discussion in the briefs regarding how it may or may not pertain to the
Counts set forth in the Complaint hampers the Court's analysis with respect to this allegation.
Given the lack of context for this particular allegation, the Court refrains from conjecturing as to
its relevance to the Court's jurisdiction and presumes that if the parties want to raise arguments
that directly pertain to any retroactive changes in the watershed plans, they will do so by fully
briefing the issue in the future.

or omissions by NRCS in oversight and supervision involved discretion, that is, whether their decisions "involve[d] an element of judgment or choice." *Berkovitz*, 486 U.S. at 536. In regard to this first requirement, the United States makes the broad assertion that "Plaintiffs have not alleged that the federal defendants violated any mandatory provision of law," and thus, "the first step of the discretionary function exception is not at issue in this case." Def.'s First Br. at 16. Plaintiffs respond in general terms that NRCS did not have discretion in the manner in which it undertook oversight and supervision at the site, but fail to explain how NRCS's discretion was constrained. Pls.' First Br. at 16 ("The discretionary function exception applies only to conduct that involves the permissible exercise of policy judgment." (quoting *Berkovitz*, 486 U.S. at 539)). Despite the lack of specificity in Plaintiffs' arguments, after reviewing the Complaint, the Court believes Plaintiffs have alleged facts that, when taken to be true and viewed in a light most favorable to Plaintiffs, support Plaintiffs' assertion that NRCS's discretion to act during the construction of the Watershed Structure was constrained by a mandatory duty.

As the *Berkovitz* Court observed, in addition to statutes and regulations, an internal agency policy may specifically prescribe a course of action such that "there is no discretion in the conduct for the discretionary function exception to protect." *Berkovitz*, 486 U.S. at 536. In this same vein, numerous courts have recognized that a governmental agency may impose a mandatory duty upon itself by entering into a contractual arrangement that may preclude the application of the discretionary function exception. *See*, *e.g.*, *Downs v. United States Army Corps of Engineers*, No. 07-11827, 2009 WL 1464861, at *4 (11th Cir. May 27, 2009) ("Contracts voluntarily entered into by the federal government can establish duties the breach of which are actionable under the FTCA."); *Bell v. United States*, 127 F.3d 1226, 1230 (10th Cir.

-19-

1997) (holding that terms of contract left no discretion); *cf. Poitra v. United States*, No. 01-1859, 2001 WL 1591289, at *1 (8th Cir. Dec. 14, 2001) (holding that contract set forth discretionary, rather than non-discretionary, duties for governmental employee).

Here, one fair interpretation of the Complaint is that, during the construction of the Watershed Structure, NRCS employees took actions that contravened contractual terms to which the United States was bound. If this is the case, the federal employees arguably did not have discretion to take such actions, and the discretionary function exception would not be applicable. This case is, thus, distinguishable from *Claude*, the case offered by the United States. In *Claude*, the Eighth Circuit reviewed the factual record, as well as the applicable laws, before concluding that there was no evidence of any requirements constraining the discretion of the government in undertaking the challenged actions. It may well be that this case is more similar to *Appley Bros. v. United States*, where the Eighth Circuit held that the discretionary function exception did not apply to the Government's failure to conduct an inspection because a Government handbook, which set forth agency procedures, established a mandatory duty to perform such inspections. 164 F.3d 1164, 1171-73 (8th Cir. 1999); *see also Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 519 (8th Cir. 2001) (finding that claims of negligence for failing to undertake certain procedures when handling loans in liquidation were not barred by the discretionary function exception because the Government's internal procedures prescribed a mandatory course of action). Here, where the United States has mounted only a facial challenge on this jurisdictional issue, the Court cannot conclude that NRCS did not bind its own discretion through the implementing agreements. Thus, the Court finds that it would be premature to apply the discretionary function exception to dismiss the claims against the United States premised on

NRCS's alleged oversight and supervision of the Watershed Structure. *See Coulthurst v. United States*, 214 F.3d 106, 110-111 (2d Cir. 2000) (holding that a claim that could be read to fairly allege negligent inspection of prison weight equipment due to laziness or careless inattentiveness was not shielded by the discretionary function exception at that early stage of litigation).

      3.    *Liability for torts by independent contractors.*

The FTCA waives sovereign immunity in tort for the actions of "any employee of the Government while acting within the scope of his office or employment," 28 U.S.C. § 1346(b)(1), and explicitly excludes from its waiver of sovereign immunity injuries caused by "any contractor with the United States," 28 U.S.C. § 2671. The United States argues that it cannot be held liable for damages due to negligent acts by the Contractor and Subcontractor (collectively "Contractors"), because NRCS did not have the "power to control the detailed day to day performances of the contractor," and thus, liability for their acts cannot attach to the United States.[7] Def.'s First Br. at 13 (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976); *Logue v. United States*, 412 U.S. 521, 528 (1973); *Knudsen v. United States*, 254 F.3d 747, 750 (8th Cir. 2001)). In support of this argument, the United States asserts that "NRCS did not select, direct or supervise the contractors engaged by Soap Creek to complete the projects." *Id.* at 14. The United States also relies on an affidavit from Roberta A. Moltzen ("Moltzen"), the State Administrative Officer for the NRCS in Iowa, in which she describes NRCS's relationship to the

_____

    [7] The Court construes this as an attack against Plaintiffs' claims of trespass, nuisance, and willful destruction of crops since Plaintiffs do not allege that NRCS employees themselves trespassed, created a nuisance, or willfully destroyed crops. Plaintiffs' claim for negligent supervision, on the other hand, is premised on the assertion that NRCS employees were themselves negligent, and the United States does not assert that the NRCS employees are not "employees of the Government" for the purposes of the FTCA. Accordingly, the independent contractor argument does not apply to the negligent supervision claim.

Soap Creek Board as it relates to the Soap Creek Watershed; notably, however, she does not discuss whether NRCS employees were, in fact, on site, supervising the Contractors. *Id.* (citing Notice of Removal, App. at 124-28).

In response, Plaintiffs do not dispute the applicable legal standard,[8] but instead, counter with an affidavit from William Topp attesting that he "witnessed employees of the [NRCS] present on the project site regularly, and witnessed NRCS employees supervising and instructing private contractors as to the details and manner of the watershed project and related matters." *Id.* (citing Clerk's No. 8-2 ¶ 2). Plaintiffs argue that "[d]iscovery is still required to ascertain the nature and scope of the NRCS and USDA oversight," and that "until central factual questions are answered, the jurisdictional questions cannot be addressed." *Id.* at 13-14. The Court agrees the factual record is insufficient to determine whether the Contractors qualify as "employees of the Government" for the purposes of the FTCA.

As noted by the United States, the "crucial question" in determining whether an individual is an employee or contractor "is the amount of control exercised by the government over the physical performance of the individual," that is, "the extent to which the government has the power to supervise the individual's day-to-day operations." *Knudsen*, 254 F.3d at 750 (citing *Orleans*, 425 U.S. at 814, and *Logue*, 412 U.S. at 528). Here, Plaintiffs have alleged that NRCS employees supervised the Contractors on a regular basis and, moreover, have submitted an affidavit in support of this assertion. The United States, on the other hand, has not provided

---

[8] Indeed, while Plaintiffs assert a claim for respondeat superior against the United States in the Complaint (Am. Compl. ¶ 64), recovery under this theory of liability is foreclosed under governing Eighth Circuit law. *St. John v. United States*, 240 F.3d 671, 676 (8th Cir. 2001) ("FTCA claims are strictly limited to a scope of employment analysis, regardless of state law doctrines of respondeat superior and apparent authority.").

any factual evidence regarding NRCS's actual role during the construction of the Watershed Structure. In light of the lack of a developed record regarding the scope of NRCS's actual interactions with the Contractors and other Defendants in this action, the Court concludes that the United States' request to dismiss the claims against it on this basis is premature. As with the issue of sovereign immunity pursuant to the Flood Control Act, the United States may file a motion, with appropriate supporting authority and evidence, disputing NRCS's control of the Contractors after the parties have developed a factual record regarding NRCS's role in the day to day construction of the Watershed Structure.

4.    *Are Plaintiffs' allegations sufficient to state a claim of negligent supervision?*

The United States next asserts that Plaintiffs have insufficiently pleaded a claim of negligent supervision under Iowa law. The United States' waiver of sovereign immunity in FTCA cases is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Supreme Court has "consistently held that § 1346(b)'s reference to the law of the place means law of the State–the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (citations and internal quotation marks omitted).

In the First Motion to Dismiss, the United States argues that Plaintiffs have failed to sufficiently plead a claim of negligent supervision under Iowa law against the United States for two reasons: (1) Plaintiffs do not present facts supporting the existence of an employment or agency relationship between the Contractors and NRCS; and (2) the Complaint does not allege that the Contractors were unfit to perform the tasks assigned to them, or that NRCS should have

been aware of such unfitness.  Def.'s First Br. at 22-23.

In response, Plaintiffs seemingly disavow a claim of negligent supervision under an employer/employee theory.[9]  Pls.' First Br. at 18.  Instead, Plaintiffs counter that Iowa law recognizes a cause of action against those who engage independent contractors who, in turn, commit illegal acts.  *Id.*  (citing Iowa Civil Jury Inst. 500.8).  Plaintiffs assert that they have stated a claim against NRCS under this cause of action by alleging that NRCS employees directly oversaw and supervised the Contractors, that NRCS was informed of problems related to the Contractors' work on the Watershed Structure, and that, despite these communications, the federal employees "continued to act unreasonably and imprudently."  Am. Compl. ¶ 66.

The United States, in its Second Motion to Dismiss, disputes whether Plaintiffs have sufficiently alleged a claim under the independent contractor theory of negligent supervision.  Def.'s Second Br. at 7.  In particular, the United States argues that NRCS had no duty to supervise the work of the Contractors because:  (1) NRCS did not select or hire the Contractors; and, (2) the Complaint fails to allege the violation of any statute or other law, or "any fact upon which a violation of such law was known or reasonably anticipated by anyone."  *Id.*  The Court

---

[9]  The employer/employee theory of negligent supervision under Iowa law would require a showing that:  (1) an employment or agency relationship exists between the Contractors and NRCS; (2) that NRCS knew, or in the exercise of ordinary care should have known, that the Contractors were incompetent, unfit, or posed a danger at the time of hiring; (3) that the Contractors' incompetence, unfitness, or dangerousness was a proximate cause of damage to the Plaintiffs; and (4) the nature and extent of the resulting damage.  *See* Iowa Civil Jury Inst. 730.5; *Godar v Edwards*, 588 N.W.2d 701 (Iowa 1999) (recognizing the torts of negligent hiring, negligent retention, and negligent supervision, under the principles set forth in the Restatement (Second) of Agency § 213 (1957)).  Notably, while Plaintiffs have alleged facts that arguably might support the existence of an employment or agency relationship between the Contractors and NRCS, the Complaint does not allege that NRCS knew, or should have known, that the Contractors were incompetent, unfit, or posed a danger at the time of hiring.  *See generally* Am. Compl.

-24-

begins its analysis with the United States' second contention, which presents a facial challenge.

Iowa courts have recognized that a person employing an independent contractor may be held liable for fault if the services of the contractor were engaged for work involving illegal conduct. In order to succeed on such a claim, Plaintiffs would have to show: (1) the Contractors acted illegally; (2) NRCS knew or should have known that the Contractors would be acting illegally in carrying out the work; (3) the Contractors were at fault and the fault was the proximate cause of Plaintiffs' damages. *See* Iowa Civil Jury Instr. 500.8 (citing *Hough v. Cent. States Freight Serv.*, 269 N.W. 1, 6 (1936)). Notably, liability for the negligent supervision of an independent contractor is "based upon the theory that the defendant contracted with the [contractor] in contemplation that [the contractor] would in some way or other evade the law of Iowa." *Hough*, 269 N.W. at 5, 7 ("[I]f one knows that a trucker has failed to comply with the laws of the state, has no legal right upon the roads of the state with a loaded truck, and then with this knowledge employs such trucker, he is participating in the doing of an illegal act and the defense of 'independent contractor' in such a case is not admissible as an excuse to deny liability."). Here, the heart of Plaintiffs' allegations are that the Contractors acted illegally, that the Contractors were at fault, and that the fault was the proximate cause of Plaintiffs' damages. However, the Complaint does not plausibly allege, even when the allegations are construed in a light most favorable to Plaintiffs, that NRCS knew or should have known that the Contractors would be acting illegally in carrying out the work at the time that the Contractors were hired. Because of this failing, the Court concludes that Plaintiffs have failed to state a claim of negligent supervision under the independent contractor theory in Iowa law, and Plaintiffs' claim in this regard must be dismissed.

4.      *Attorney's Fees*.

The United States also asserts that Plaintiffs' claims for treble damages under Iowa Code §§ 658.4 and 717A.3 should be dismissed.  In response, Plaintiffs state that they "do not seek punitive damages from the federal defendants/United States under Iowa Code §§ 658.4 and 717A.3."  Pls.' First Br. at 17.  Accordingly, the Court finds the United States' argument regarding Plaintiffs' request for punitive damages under Iowa Code §§ 658.4 and 717A.3 moot.

However, Plaintiffs maintain that they are entitled to attorney's fees under §§ 658.4 and 717A.3.  In the Second Motion to Dismiss, the United States observes that 28 U.S.C. § 2678 governs any attorney fees under the FTCA.  Def.'s Second Br. at 6-7.  Section 2678 provides:

> No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any judgment rendered pursuant to section 1346(b) of this title or any settlement made pursuant to section 2677 of this title, or in excess of 20 per centum of any award, compromise, or settlement made pursuant to section 2672 of this title.
>
> Any attorney who charges, demands, receives, or collects for services rendered in connection with such claim any amount in excess of that allowed under this section, if recovery be had, shall be fined not more than $2,000 or imprisoned not more than one year, or both.

The Court agrees that § 2678 limits the amount an attorney can receive as a fee in regard to claims under the FTCA.  Plaintiffs' request for attorney's fees is, therefore, constrained by § 2678.

## IV. CONCLUSION

For the reasons stated herein, the United States' First Motion to Dismiss (Clerk's No. 3) and Second Motion to Dismiss (Clerk's No. 17) are GRANTED in part and DENIED in part.  In particular, Count IV is dismissed to the extent that Plaintiffs seek to impose liability on the United States for NRCS's acts or omissions in planning the Watershed Project and for NRCS's

allegedly negligent supervision of the Contractors. In addition, the parties shall consult with Magistrate Judge Walters to establish an expedited discovery schedule regarding facts that pertain to the United States' assertion of sovereign immunity, including whether floods or flood waters caused the alleged damages, whether NRCS policy or contractual obligations prescribed certain actions by NRCS during the construction of the Watershed Structure, and to what degree NRCS employees were involved in the construction of the Watershed Structure.

IT IS SO ORDERED.

Dated this ___31st___ day of August, 2010.

_____
ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT